UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rebekah Ann T.,[1]

              Plaintiff,                                    Court File No.  21-cv-409 (NEB/LIB)

      v.                                                   **REPORT AND RECOMMENDATION**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

              Defendant.

Plaintiff, Rebekah Ann T., (hereinafter "Plaintiff"), seeks judicial review of the decision of the Acting Commissioner of Social Security ("Defendant") denying her application for disability benefits.  This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g).  Both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the parties' written submissions.  [Docket Nos. 23, 26].

For the reasons discussed herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 23], be **DENIED**, and that Defendant's Motion for Summary Judgment, [Docket No. 26], be **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order.  Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

## I. Procedural History

On September 17, 2018, Plaintiff filed a Title II application for supplemental security income. (Tr. 131-136).[2]  Plaintiff alleged that her disability began on June 30, 2017, and that her disability was caused by impairments of "autism," "anxiety disorder-severe chronic anxiety," and "obsessive compulsive disorder." (Tr. 54).  The Acting Commissioner initially denied Plaintiff's present claims on April 12, 2019, and again, upon reconsideration, on June 10, 2019. (Tr. 87-98). On July 8, 2019, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 11, 99-101).

Administrative Law Judge Micah Pharris (hereinafter "ALJ") conducted a hearing on May 12, 2020. (Tr. 11).  Plaintiff testified at the hearing, along with her father, Charles Tifft, and an independent vocational expert, Kimberly E. Eisenhuth. (Tr. 11, 41).  On May 27, 2020, the ALJ issued a decision denying Plaintiff's request for supplemental security income. (Tr. 11-20).  The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 20).

Thereafter, Plaintiff sought review of the decision by the Appeals Council. (Tr. 1-7). Subsequently, on December 10, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1).  Accordingly, the ALJ's decision became the final decision of the Acting Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

On February 12, 2021, Plaintiff filed the present action. (Compl., [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the written submissions. [Docket Nos. 23, 26].

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 17], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 56 exhibits. (See Administrative Record [Docket No. 17). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

## II.  Standards of Review

### A.  Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision.  20 C.F.R. §§ 404.907–404.909.  A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ").  42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis.  This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992).  The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B.  Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council; however, the Appeals Council need not grant that request for review.  See 20 C.F.R. §§ 404.967–404.982.  The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals

Council's action.  See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.  In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled.  (Tr. 1-7).

### C.  Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps.  However, judicial review of the Commissioner's decision to deny disability benefits is constrained to a determination of whether the decision is supported by substantial evidence in the record, as a whole.  42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole.").  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007); Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ.  Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004).  The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence.  Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm

the decision. <u>Robinson v. Sullivan</u>, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." <u>Id.</u> "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." <u>Medhaug v. Astrue</u>, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. <u>See</u> 20 C.F.R. § 404.1512(a); <u>Whitman v. Colvin</u>, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. <u>Goff v. Barnhart</u>, 421 F.3d 785, 790 (8th Cir. 2005).

## III. Decision Under Review

The ALJ made the following determinations during the five-step disability evaluation process. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the application date, September 17, 2018. (Tr. 13). This finding is not in dispute. The Court will refer to the period of time between the date Plaintiff last engaged in substantial gainful activity and the date through which the ALJ issued his decision denying Plaintiff's request for supplemental security income as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had the following severe impairments: generalized anxiety disorder; anxiety due to known physiological condition, autism spectrum disorder, and unspecified depressive disorder.  (Tr. 13).  These findings are not in dispute.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13).  Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 12.04, 12.06, and 12.10.  (Tr. 14-15).  Plaintiff challenges the ALJ's findings at step three only with respect to Listing 12.06.

At step four, the ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple, routine, repetitive tasks at a nonproduction pace, occasional, superficial (no lower than 8 on the selected characteristics of occupations people rating) contact with supervisors and coworkers, and no contact with the public.

(Tr. 15).  Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record, as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" however, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 16).  Plaintiff challenges this credibility finding by the ALJ.

The ALJ next found that Plaintiff had no past relevant work.  (Tr. 18).  Plaintiff does not challenge this finding.

Finally, at step five, the ALJ concluded that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (Tr. 19). Relying upon testimony from independent vocational expert Kimberly E. Eisenhuth, ("IVE Eisenhuth"), the ALJ specifically found that, among the representative occupations, Plaintiff would be able to perform the requirements of industrial cleaner (Dictionary of Occupational Titles No. 381.687-018) of which there are 60,000 positions in the national economy; laundry worker II (Dictionary of Occupational Titles No. 361.685-018) of which there are 75,000 positions in the national economy; and lamination assembler, printed circuit boards (Dictionary of Occupational Titles No. 726.687-026) of which there are 57,000 positions in the national economy. (Tr. 19). Other than an implicit challenge based on Plaintiff's other challenges, Plaintiff does not directly challenge the ALJ's findings at step five.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 20).

## IV. Analysis

Plaintiff asserts one general overarching issue on her appeal of the ALJ's decision: whether there is substantial evidence on the record, as a whole, to support the ALJ's RFC determination. (Plf.'s Mem., [Docket No. 25], at pp. 11-17). In support, Plaintiff first asserts that the ALJ erred in finding that Plaintiff did not meet SSA Listing 12.06. (Id. at pp. 11-14). Second, Plaintiff asserts a catchall argument contending that the ALJ's RFC determination is not supported by substantial evidence due to several purported deficiencies. (Id. at pp. 14-17).

Although presented separately, at their core, each of Plaintiff's arguments simply ask this Court to reweigh the medical evidence and to come to a different conclusion than the ALJ.

### A.  Listing 12.06

As noted above, Plaintiff argues that the ALJ erred at step three of the sequential process in finding that Plaintiff did not meet Social Security Listing 12.06.  (See Plf.'s Mem., [Docket No. 14], at p. 11).  In support, Plaintiff appears to argue that the ALJ failed to properly consider the opinions of the state agency psychological consultant and her treating provider, both of which support a finding that Listing 12.06 is met. (Id.).

At step-three of the sequential evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged to be so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 416.925.  If a claimant's impairment meets or equals one of the listed impairments, then the claimant is considered disabled, and is awarded benefits.  20 C.F.R. § 416.920(d).

The ALJ's decision to deny disability benefits must be supported by substantial evidence in the record as a whole.  Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005).  The burden of proof, however, is on the Plaintiff to establish that her impairment meets or equals a listing.  See Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990).  To meet a listing, an impairment must meet all of the listing's specified criteria.  Id. at 530 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).  "Medical equivalence must be based on medical findings."  20 C.F.R. § 416.926(b) (2003); Sullivan, 493 U.S. at 531 ("a claimant . . . must present medical findings equal in severity to all the criteria for the one most similar listed impairment.").

The required level of severity in a claimant's anxiety-related disorder is met when the requirements of paragraphs A and B of Listing 12.06 are shown or when the requirements of

paragraphs A and C of Listing 12.06 are shown. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06. Paragraph A of Listing 12.06 requires proof of generalized persistent anxiety accompanied by at least three symptoms (the "Paragraph A Criteria").[3] Id. at 12.06(A). Paragraph B of Listing 12.06 requires the disorder result in at least two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration (the "Paragraph B Criteria"). Id. at § 12.06(B). Paragraph C of Listing 12.06 requires the disorder result in a "complete inability to function independently outside the area of one's home" (the "Paragraph C Criteria"). Id. at §12.06(C).

Here, the ALJ specifically discussed Listing 12.06 at step-three of the sequential process, but rather than addressing the Paragraph A Criteria, the ALJ addressed the Paragraph B and the Paragraph C Criteria. (Tr. 14). Turning first to the Paragraph B Criteria, the ALJ determined that Plaintiff's mental impairments did not cause "at least two 'marked' limitations or one 'extreme' limitation" in the four areas of mental functioning—i.e., understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 14-15). The ALJ then turned to the Paragraph C Criteria and determined that this was also not met because, despite her reported anxiety, Plaintiff is able to independently carry out activities of daily living; is her own guardian; and has only been required to undergo out-patient treatment for her symptoms with no clinician having recommended a higher level of

---

[3] Listing 12.06(A) requires at least three of the following symptoms: (1) generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: a) motor tension, b) autonomic hyperactivity, c) apprehensive expectation, or d) vigilance and scanning; or 2) a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or 3) recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or 4) recurrent obsessions or compulsions which are a source of marked distress; or 5) recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06 (A).

treatment.  (Tr. 15).  In her motion for summary judgment, Plaintiff only challenges the ALJ's findings with respect to the Paragraph B and the Paragraph C Criteria.

### 1.  Paragraph B Criteria

Plaintiff first asserts that the ALJ erred in determining that Plaintiff did not meet the Paragraph B Criteria because the state agency psychological consultant's opinion, which found that Plaintiff had "marked" limitations in "interacting with others" and "adapt[ing] or managing oneself," was improperly discounted.  (Plf.'s Mem., [Docket No. 25], at p. 12).  Plaintiff further asserts that the ALJ failed to explain the weight he gave said opinion.  (Id.).  The Court finds these arguments unpersuasive.

Although the opinions of consultative examiners, non-examining testifying experts, and non-examining State Agency consultants may not constitute substantial evidence on their own, an ALJ does not err when he relies on these opinions, and they are supported by the rest of record. See Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014); Johansen v. Astrue, No. 10-2076 (DWF/SER), 2011 WL 4583831, at *13 (D. Minn. Aug. 15, 2011), report and recommendation adopted by 2011 WL 4583828 (D. Minn. Sept. 30, 2011); Nelson v. Astrue, No. 06-4298 (DWF/SRN), 2008 WL 822157, at *17 (D. Minn. Mar. 26, 2008).  However, when determining the appropriate amount of weight to give a medical opinion from a non-treating source, the ALJ considers the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. Wiese v. Astrue, 552 F.3d 728, 731 (8th Cir. 2009). See also 20 C.F.R. § 404.1527(c). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." Wagner, 499 F.3d at 848 (quoting Pearsall, 274 F.3d at 1219).

Here, the state agency psychological consultant, Dr. James Huber, PhD., provided opinions as to Plaintiff's functional capacity in March 2019. (Tr. 366-370). In this opinion, Plaintiff was observed arriving on time; she appeared dressed and groomed appropriately; she maintained adequate eye contact; and was reportedly friendly and cooperative. (Tr. 368-367). Dr. Huber opined that Plaintiff "appear[ed] able to understand, remember, and follow instructions," "sustain adequate attention and concentration," and "carry out work-like tasks with reasonable persistence and pace," but her ability to "consistently respond appropriately to coworkers and supervisors and to tolerate stress and pressure in the workplace over time appears to be markedly impaired by her high anxiety." (Tr. 370). The ALJ found Dr. Huber's opinion regarding Plaintiff's marked limitations in the workplace unpersuasive because it was not supported by the record, which showed "no issues with supervisors or coworkers in her job as a dishwasher and no issues reported in [her] vocational rehabilitation notes." (Tr. 18).

The Court's review of the record indicates that the ALJ's reasons for discounting Dr. Huber's opinion accurately reflects the record and constitutes proper reasons for discounting said opinion. Plaintiff's vocational rehabilitation notes indicate that, at her July 2018, intake appointment, Plaintiff arrived punctual with her father. (Tr. 338). She reported being her own guardian and having an interest in working with art and animals, such as an animal shelter. (Tr. 338). Plaintiff also reported suffering from anxiety with triggers occurring during a change in routine and in areas that are socially busy, but that her coping strategy is to draw, and in emergencies, to take medication. (Tr. 338); see Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (quoting Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009)) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."); see also Hill v. Colvin, 753 F.3d 798, 800 (8th Cir. 2014). At the next planning appointment in August 2018, Plaintiff

was punctual, arriving with her father. (Tr. 334). She reported no issues in applying for a position in a baking department. (Tr. 334). Plaintiff also expressed an interest in baking, working with animals, working within a library, and pursuing college in the future. (Tr. 334). Plaintiff was recommended to engage in work shadowing to "assist [her] in discovering which type of careers . . . she would enjoy and succeed at." (Tr. 334). On September 7, 2018, Plaintiff arrived twenty minutes early at her planning appointment, wherein work shadowing options were discussed, and on September 17, 2018, Plaintiff reported completing her first work-shadowing as a groomer and enjoying the experience. (Tr. 331-332). Lastly, on October 8, 2018, Plaintiff reported that she enjoyed work-shadowing as a cake decorator, and that she would soon be work-shadowing at a library. (Tr. 330). As the ALJ noted, there is no indication in these records that, in her efforts to obtain employment, Plaintiff suffered any challenges in applying for employment, communicating with supervisors or coworkers, or that she experienced any anxiety during work shadowing.

Therefore, the ALJ's decision to give the opinion of Dr. Huber less or little weight by citing to the vocational rehabilitation records was not error. The ALJ properly reviewed and considered these records to determine that Plaintiff reported no issues communicating with supervisors or coworkers, or engaging in the work shadowing process, which was contrary to Dr. Huber's opinion. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to discount an opinion where the opinion was based largely on the claimant's subjective complaints rather than on objective medical evidence).[4] In other words, Dr. Huber's opinion was inconsistent

---

[4] Plaintiff also appears to assert that, in finding Dr. Huber's opinion unpersuasive, the ALJ mischaracterized evidence from the vocational rehabilitation records and failed to acknowledge that Plaintiff's position as a dishwasher was in a "sheltered setting[] created specifically to accommodate [her] impairments." (Plf.'s Mem., [Docket No. 25], at p. 15). However, the Court's review of the vocational rehabilitation notes, supra, indicates that the ALJ did properly consider these notes in their entirety. Further, contrary to Plaintiff's assertion, the ALJ did acknowledge and consider the accommodations Plaintiff had been receiving at her employment within his decision. The ALJ specifically noted that Plaintiff testified to working "shorter shifts of 5 hours twice a week . . . washing dishes . . . because it [was] too stressful." (Tr. 16). The ALJ also noted that Plaintiff testified to being able to work with one ear bud in place "to keep out the kitchen noise." (Tr. 16). However, the ALJ found that "the overall record [was] not entirely consistent

with Plaintiff's vocational rehabilitation notes, which, as the ALJ found, did not report any concerns with, among other things, Plaintiff communicating to supervisors or co-workers or handling stress. (Tr. 326-349); see Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (ALJ may reject opinion of any medical expert if it is inconsistent with record as whole). Because the ALJ had a proper basis to discount the opinion of Dr. Huber, the ALJ's decision to give lesser weight to the opinion of Dr. Huber was within the available zone of choice. Robinson, 956 F.2d at 838; Bradley, 528 F.3d at 1115.

To the extent Plaintiff generally argues that the ALJ erred in finding that Plaintiff did not meet the Paragraph B Criteria, the record now before the Court does not demonstrate that.

In his decision, the ALJ determined that Plaintiff had only a mild limitation in understanding, remembering, or applying information, finding that, among other things, school reports indicated functioning in at least the average range of intelligence with Plaintiff having "very good grades" during her last year of high school. (Tr. 14, 388). An IEP report, in September 2017, also indicated that, while Plaintiff had "problems with anxiety" and "struggle[d] with large and loud crowds," there was a "huge decrease" in these behaviors during the school year, with Plaintiff reporting to a vocational counselor that the frequency and severity of anxiety attacks decrease as she becomes used to her class environment and schedule. (Tr. 14, 338, 341, 393).

The ALJ also determined that Plaintiff only had moderate limitations in the areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (Tr. 14). In interacting with others, the ALJ found that, at a September 2017, wellness check-up, Plaintiff reported having close friends; no social concerns; and while her anxiety was

---

with the claimant's allegation regarding her functional limitations" because she had not reported anxiety issues during her job-related activities, "[was] continually on a job search, ha[d] done some job-shadowing, and consistently applie[d] for jobs." (Tr. 16). Therefore, Plaintiff's argument is without merit.

triggered by large crowds and changes to routine, Plaintiff's symptoms were well controlled with medication and familiarity with the environment. (Tr. 14, 312, 326-349, 338, 472, 520). As to her ability to concentrate, persist, and maintain pace, contrary to Plaintiff and her mother's assertion that her anxiety disorder interfered at times with her ability to concentrate and complete tasks, the ALJ found that mental status examinations by treating providers did not show an impairment in this area. (Tr. 14, 365-370, 509-532). Finally, as to adapting or managing herself, the ALJ found that, while she was reportedly living with her parents in 2019, Plaintiff was her own guardian and was exploring moving out with her friend at the end of the year. (Tr. 14; 354, 378-379, 520, 525). The ALJ also cited to treatment notes, which indicated that Plaintiff could report her own symptoms, seek treatment changes, and seek additional services to assist her in achieving her goals. (Tr. 1415, 326-359). The ALJ further provided that Plaintiff was aware of situations that may trigger her anxiety and that she can manage her symptoms with medication to avoid triggers. (Tr. 14-15, 479). The ALJ also determined that, in her efforts to seek employment, as discussed, supra, Plaintiff's vocational rehabilitation notes did not indicate any difficulty in her ability to understand, remember, or apply information, her ability to interact with others, or her ability to concentrate, persist, or maintain pace. (Tr. 14, 326-349).

There is other evidence in the record that supports the ALJ's finding that Plaintiff had no marked limitations in the areas of mental functioning to meet the Paragraph B Criteria. At the May 12, 2020, administrative hearing, Plaintiff testified that she graduated high school and her anxiety attacks occurred less frequently during her junior and senior year. (Tr. 34). Plaintiff also testified that, since graduating high school, she has only had one "severe" panic attack this year with smaller panic attacks occurring every "two or three weeks." (Tr. 35-36). Plaintiff testified that she last worked as a dishwasher in March 2020 but was furloughed due to the COVID-19

pandemic.  (Tr. 32-33); see Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (finding it relevant to credibility that the claimant stopped working for reasons other than for the claimant's medical condition).  Plaintiff further testified that she never experienced a "full-blown panic attack," while working, but that she has had to leave her shift early at least three times after being overwhelmed. (Tr. 36-37).  Plaintiff further testified that she received accommodations during her employment— she worked for five hours, two times a week; was allowed to wear one "ear bud" in order to muffle out the noise from the kitchen; and her work shift was switched to quieter days of the week to avoid a stressful and "chaotic" kitchen.  (Tr. 37-38).  Lastly, Plaintiff testified that she has a driving permit; lives with her parents; and has "a tendency to forget to eat."  (Tr. 39-40).

In a January 2019, Adult Function Report, Plaintiff reported that, while her "excessive exposure to outside stimuli . . . cause[d] panic attacks, anxiety, and obsessive-compulsive behavior" and her "anxiety interferes with [her] daily function," ranging from mild to severe, Plaintiff also reported spending the day "tend[ing] to her rabbits, . . . hang[ing] out with [her] roommate for a while," doing chores when needed, eating lunch, shopping, exercising for an hour or two, drawing, talking, playing video games, going to church, participating in game night, and going to a local coffee shop.  (Tr. 156-157, 161); see e.g., Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (finding that the claimant's ability to "dress and bathe herself," and "do homework, cooking, and shopping" contradicted his "testimony regarding the severity of [his]. . . disability.").  Plaintiff also provided that, while her anxiety affects her ability to drive and "keeps her up at night," her anxiety symptoms do not affect her ability to dress, bathe, care for her hair, shave, feed herself, or use the toilet.  (Tr. 157, 162); see Lawrence, 107 F.3d at 676.  Plaintiff also reported being able to groom and feed her rabbits and feed the "family dogs."  (Tr. 157).  Lastly, Plaintiff

did not report that her condition affects her memory, completing tasks, concentration and understanding, or follow instructions. (Tr. 163).

Vocational rehabilitation notes reported Plaintiff as being creative, having good reading, writing, and computer skills, being self-aware, having volunteer experience, being a high school graduate (graduated top 2 of class), and having strong organizational skills. (Tr. 214). At a March 2019, psychological consultative examination, Plaintiff reported that, while "she has panic attacks a couple of times a week" and "she does not handle stress and pressure well," she also reported that her attention and concentration are "okay"; and her anxiety level is a "2/10" at home, "3/10" in school, and between "4 and 6/10" during her work shadowing experiences. (Tr. 369). Plaintiff also reported that she has some close friends (one who lives with her) and can communicate effectively with others. (Tr. 368). Plaintiff reaffirmed that she takes medication for her anxiety attacks and that the medication has been helpful. (Tr. 367).

Therefore, there is substantial evidence in the record that supports the ALJ's finding that Plaintiff did not have a marked limitation in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing herself, in order to meet the Paragraph B Criteria.

## 2. Paragraph C Criteria

Plaintiff next asserts that the ALJ erred in determining that Plaintiff did not meet the Paragraph C Criteria because there is essentially other evidence to support that she meets this listing. (Plf.'s Mem., [Docket No. 25], at p. 13). Plaintiff specifically argues that her medical records and the opinion of "Therapist Kotnik" show "a mental disorder that is 'serious and persistent' for at least 2 years with medical treatment that is ongoing" with "additional evidence

that [she] has a minimal capacity to adapt to changes in the environment or demands new to one's daily life." (Id.). The Court also finds this argument unpersuasive.

The Court's review of the record indicates that the ALJ's reason for finding that the Paragraph C Criteria is not met accurately reflects the state of the record. The Paragraph C Criteria evaluates whether a claimant's mental disorder is serious and persistent. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06. To meet the requirements of Paragraph C for Listing 12.06, a claimant must show:

> [T]he claimant's] mental disorder in this listing category is "serious and persistent;" that is, [the claimant] ha[s] a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: 1) Medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder; and 2) Marginal adjustment, that is, [the claimant] ha[s] minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06.

Here, the ALJ found that the Paragraph C Criteria was not satisfied because, while Plaintiff received outpatient treatment for her symptoms, no clinician had recommended Plaintiff receive a higher level of treatment. It is well settled that if an impairment can be controlled by treatment or medication, it cannot be considered disabling. Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995); Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993). Further, the ALJ found that the Paragraph C Criteria was not satisfied because Plaintiff "lives with her family, is independent in carrying out activities of daily living, [and] is her own guardian," which, therefore, did not reflect a marginal adjustment. (Tr. 15). As noted above, the burden of proof is on the Plaintiff to establish that her impairment meets or equals a listing, and to meet a listing, an impairment must meet all of the listing's specified criteria. See Sullivan, 493 U.S. at 530 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify.").

Plaintiff's medical records are also consistent with the ALJ's finding that Plaintiff did not meet the Paragraph C Criteria. For example, Plaintiff's mental status exams regularly showed normal memory, and appropriate mood, as well as, good insight and judgment. (Tr. 163, 171, 343, 345, 384, 386, 439-440, 513, 520-532). Plaintiff's treatment records did not largely demonstrate difficulty in understanding or applying information. (Tr. 370, 386, 398, 413, 431, 436, 453). Further, Plaintiff's treatment records showed her to be cooperative and pleasant, while also maintaining good eye contact. (Tr. 318, 321, 340, 343-345, 369, 443). Moreover, the records relied on by Plaintiff are largely subjective complaints of her mental impairments; however, it is well established that proof of a disabling impairment must be supported by at least some objective medical evidence. Marolf v. Sullivan, 981 F.2d 976, 978 (8th Cir. 1992); see also 20 C.F.R. § 416.926(b) ("Medical equivalence must be based on medical findings."); Sullivan, 493 U.S. at 531 ("a claimant . . . must present medical findings equal in severity to all the criteria for the one most similar listed impairment.").

Lastly, the ALJ specifically discussed Ms. Kotnick's conclusory opinion, but found her opinions were unpersuasive. "[A] treating physician's opinion is given 'controlling weight' if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" Dolph v. Barnhart, 308 F.3d 876, 878 (8th Cir. 2002) (quoting 20 C.F.R. § 404.1527(d)(2)). However, a treating physician's opinion "do[es] not automatically control, since the record must be evaluated as a whole." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995).

The Eighth Circuit has held that an ALJ may properly choose not to give controlling weight to the opinion of a treating physician when it is based solely on a claimant's subjective reports, or when the opinion is inconsistent with the treating physician's own treatment notes. Papesh v.

Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015). Even when a treating physician's opinion is not entitled to controlling weight, the opinion is typically entitled to substantial weight and should not ordinarily be disregarded without good reason. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015).

However, an ALJ may properly choose to give the opinion of a treating physician no weight when it is inconsistent with the overall evidence in the medical record. Papesh, 786 F.3d at 1132. Further, "an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Miller, 784 F.3d at 477 (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010)). A treating physician's opinion "on the issue(s) of the nature and severity" of an impairment is given controlling weight when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2).

Moreover, "opinions that a claimant is 'disabled' or 'unable to work' concern issues reserved to the Commissioner and are not the type of opinions which receive controlling weight." Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005)); see also, SSR 96-5p (July 2, 1996) ("Giving controlling weight to [treating source] opinions would, in effect, confer upon the treating source the authority to make" disability determinations). When an ALJ chooses not to give controlling weight to the opinion of a treating physician, the regulations require that they explain their reasons for doing so. See 20 C.F.R. § 404.1527(c)(2).

Here, on August 29, 2019, Ms. Kotnick completed a "Medical Source Statement" form in which Ms. Kotnick offered opinions and information regarding Plaintiff's mental impairments.

(Tr. 384-387).  In that check the box form, Ms. Kotnick provided and checked boxes opining that Plaintiff's "sleep disturbance, history of recurrent panic attacks, paranoia or inappropriate suspiciousness, social withdrawal or isolation, [and] generalized persistent anxiety" resulted in a marked limitation in Plaintiff's ability to maintain attention for a two-hour segment, sustain an ordinary routine without special supervision, respond appropriately to changes in routine work setting, and deal with normal stress.  (Tr. 384-386).  Ms. Kotnick did not provide a basis for this opinion nor provide any opinion has to how Plaintiff's purported disabilities would specifically affect Plaintiff's mental functioning.  (Id.).

As noted above, the ALJ discussed Ms. Kotnick's opinion form but found her opinions unpersuasive because "the underlying records do not support the factual allegations in the opinion."  (Tr. 18).  Therefore, the ALJ expressly considered her opinion, specifically discussing the findings in Ms. Kotnick's opinion form and diagnostic notes and found her opinion unpersuasive.  (Tr. 18).  Indeed, the Court's review of the record indicates that the ALJ's reason for discounting the Ms. Kotnick's opinion accurately reflects the record and constitutes proper reasons for discounting said opinion.  The medical provider's "check the box opinion" form is wholly conclusory and unsupported by any reported medically acceptable clinical or diagnostic data.  An ALJ may properly discount the opinion of a treating provider that is conclusory or unsupported and contradicted by other evidence in the record.  Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991).

Indeed, without any further elaboration or explanation, Ms. Kotnick's simply checked the boxes to indicate Plaintiff was unable to obtain or retain employment.  (Tr. 384-387).  "The checklist format, generality, and incompleteness of the assessments limit [the assessments'] evidentiary value."  Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010) (alteration in original)

(quoting Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001)). "Indeed, [a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements." Id. (quoting Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996)).

As such, it was not error for the ALJ to find unpersuasive Ms. Kotnick's conclusory opinion that Plaintiff's marked limitations do not allow her to maintain attention for a two-hour segment, sustain an ordinary routine without special supervision, respond appropriately to changes in routine work setting, and deal with normal stress in a working place setting. Similar to Dr. Huber's opinion, because the ALJ had a proper basis to discount Ms. Kotnick's conclusory opinion, the ALJ's decision to give lesser weight to her opinion was within the available zone of choice. Robinson, 956 F.2d at 838; Bradley, 528 F.3d at 1115.

In sum, Plaintiff fails to highlight any evidence which she believes the ALJ ignored, but merely wishes this Court to reconsider the same evidence to reach a different conclusion than the conclusion reached by the ALJ, which this the Court cannot do. Indeed, the Court may not reverse the ALJ simply because substantial evidence supports an opposite conclusion. See Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015). Nor can the Court substitute its own judgment or findings of fact for those of the ALJ. See Woolf, 3 F.3d at 1213. The Court "must consider evidence that both supports and detracts from the ALJ's decision," and "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" See Milam, 794 F.3d at 983 (citations omitted) (emphasis added).

**B. RFC Determination**

Plaintiff next asserts a catchall argument and contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to include certain limitations within the RFC.  (Plf.'s Mem., [Docket No. 25], at p. 15).

"A claimant's RFC represents the most [s]he can do despite the combined effects of all of h[er] credible limitations and must be based on all credible evidence." McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011); accord, 20 C.F.R. § 404.1545(a)(1). "A disability claimant has the burden to establish h[er] RFC." Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." Id. at 591. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of a claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff first appears to contend that, because the ALJ found, at step-three of the sequential analysis, that Plaintiff had mild limitations in understanding, remembering, and applying information, as well as, moderate limitations in the ability to interact with others, concentrate, persist, or maintain pace, or her ability to adapt or managing herself, the ALJ should have included at least some mental health related limitations in the step-four RFC determination and corresponding hypothetical question to the vocational expert, resulting in a substantially more limiting RFC determination.  (Plf.'s Mem., [Docket No. 25], at p. 15).

However, Plaintiff's apparent argument is based on a fundamental misunderstanding of the relationship between the ALJ's step-three analysis of mental functioning and the step-four RFC determination. As the Eighth Circuit recently explained, "the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018) (citing Lacroix v. Barnhart, 465 F.3d 881, 888 n.3 (8th Cir. 2006)) ("Each step in the disability determination entails a separate analysis and legal standard.").

In Chismarich, the Eighth Circuit considered whether an ALJ erred by not including more-specific limitations in his RFC determination after finding moderate limitations in three areas of mental functioning in the step-three sequential process, including a limitation in understanding, remembering, or applying information. Id. at 980. The Eighth Circuit held that an RFC prescribing "simple instructions and non-detailed tasks"; "working at a normal pace without production quotas"; "casual and infrequent" contact with supervisors and co-workers; and "regular contact with the public" were all sufficient to account for the plaintiff's moderate limitations to daily living, social functioning, and in maintaining concentration, persistence, or pace. Id. The Eighth Circuit concluded that there was "nothing inconsistent with the ALJ's separate analyses at the different steps in this case." Id.

Here, the Court finds no inconsistency between the ALJ's step-three findings that Plaintiff has a mild limitation in understanding, remembering, and applying, and a moderate limitation in interacting with others, maintaining concentration, persistence, or pace, and in adapting or managing herself, and the ALJ's step-four RFC determination. Like in Chismarich, 888 F.3d at 980, Plaintiff's moderate limitations in the above areas are adequately reflected in the RFC's

limitation to "simple, routine and repetitive tasks"; "at a nonproduction pace"; "occasional, superficial contact with supervisors and coworkers"; and "no contact with the public." (Tr. 15). See Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001) (hypothetical concerning a claimant who is capable of doing simple, repetitive, routine tasks adequately captured the individual's deficiencies in concentration, persistence or pace); see also Goudeau v. Saul, 2020 WL 7023936, at *5 (E.D. Mo. Nov. 30, 2020) (finding that claimant's moderate limitations in the areas of understanding, remembering or applying, concentration, persistence, or pace, adapting or managing oneself, and interacting with others were "adequately reflected" in the RFC limitation to "repetitive tasks," "exclusion of work involving an assembly line or conveyor belt," and occasional interactions with coworkers and supervisors and no contact with the general public).

Therefore, because the Court holds that the ALJ's step-four RFC determination adequately accounted for the ALJ's step-three findings, the ALJ did not err.

Plaintiff next argues that the ALJ erred in failing to include the "marked" limitations assessed by Dr. Huber and Ms. Kotnick. (Plf.'s Mem., [Docket No. 25], at p. 15). In support, Plaintiff points to Dr. Huber's opinion wherein, as noted above, he opined that Plaintiff's ability to "consistently respond appropriately to coworkers and supervisors and to tolerate stress and pressure in the workplace over time appears to be markedly impaired by her high anxiety." (Tr. 366-370). However, as already discussed, this evidence was specifically considered by the ALJ, and his opinion was properly discounted. (Tr. 18).

Specifically, in his decision, the ALJ noted that Plaintiff has an "anxiety disorder, which interferes at times with her ability to concentrate, persist, or maintain pace" with her mother reporting that Plaintiff becomes "severely limited" in her ability to concentrate and complete tasks if Plaintiff is "severely anxious." (Tr. 14). The ALJ then cited to Dr. Huber's opinion, as well as,

mental health treatment notes from Range Mental Health Center, noting that, while Dr. Huber reported that Plaintiff was unable to "subtract serial sevens" and was unable to "remember only 3/4 words after 5 minutes," the mental health records did not show that Plaintiff had an impairment of concentration or attention. (Tr. 14). The ALJ also specifically addressed Dr. Huber's opinion, and as discussed above, the Court found that the ALJ's decision to give the opinion of Dr. Huber less or little weight is supported by substantial evidence in the record due to, among other things, its inconsistency with Plaintiff's vocational rehabilitation notes. See Wagner, 499 F.3d at 848 (quoting Pearsall, 274 F.3d at 1219) ("The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole."). Therefore, the ALJ was not required to include in the RFC Dr. Huber's purported "marked" limitations.

The same can be said for Ms. Kotnick's opinion. To the extent Plaintiff argues that the RFC should have also included the "marked" limitations assessed by Ms. Kotnick, this Court has already similarly found, supra, that the ALJ specifically discussed her opinion in his decision and that he properly discounted it. Therefore, the ALJ was also not required to include in the RFC Ms. Kotinick's purported "marked" limitations.

Plaintiff's argument that the ALJ should have incorporated Dr. Huber and Ms. Kotnick's "marked" limitations into the RFC is less of an argument that the RFC failed to include the restriction altogether, and more of an argument that the RFC finding should have been more restrictive. However, Plaintiff is essentially asking the Court to independently re-weigh the evidence that the ALJ considered, and then substitute its own conclusions over those of the ALJ; this the Court cannot do under the applicable standard of review. Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213.

Moreover, the Court's review of the record shows that the ALJ properly considered, among other things, Plaintiff's subjective complaints and the objective medical records to deny Plaintiff benefits.  See Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005) ("The ALJ was entitled to consider all of the evidence in the record."); see also Stormo v. Barnhart; 377 F.3d 801, 807 (8th Cir. 2004) (quotations omitted) ("The ALJ should consider all evidence in the record . . . .").

The ALJ provided that Plaintiff testified to, among other things, struggling with social interactions and anxiety.  (Tr. 16).  Plaintiff's father, Charles Tifft, also testified that Plaintiff had anxiety and panic attacks at home at times; could handle her money independently; managed her own medication; and was not hired after several job trials.  (Tr. 16).  The ALJ then cited to Plaintiff's adult function report to provide how Plaintiff alleged anxiety interfered with work-related activities, such as only being able to lift 10-15 pounds.  (Tr. 16).  Plaintiff further reported that, while she can follow instructions, she has no difficulty paying attention if she does not have bad anxiety.  (Tr. 16).  Plaintiff also reported to having a poor ability to manage stress and change in routine and finds socializing stressful, but she does meet with others regularly.  (Tr. 16).  The ALJ also cited to a third-party function report prepared by Plaintiff's mother, who reported that Plaintiff was "severely anxious," which "severely limited [her] ability to concentrate and complete tasks."  (Tr. 16).  The ALJ then provided that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms" but her "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 16).  The ALJ then precisely explained these inconsistencies.

For example, in addition to the evidence discussed above, the ALJ noted that the medical evidence showed that Plaintiff's panic and anxiety attacks have only occurred in two

26

circumstances—when attempting to sleep and in crowds. (Tr. 16). The ALJ determined, however, that, while attempting to sleep may cause Plaintiff daytime fatigue, it was not enough to cause a severe impairment. (Tr. 16). Further, the ALJ noted that Plaintiff's anxiety in crowds did not rise to the level of a marked limitation because, among other things, Plaintiff's treatment notes indicated good control of symptoms with medication and normal mental status exams. (Tr. 17). Specifically, Plaintiff's medical records revealed that in September 2017, Plaintiff reported no issues with nutrition, sleeping, and school performance, as well as, no social concerns, well-controlled anxiety with medication, and her mental status was reported as normal. (Tr. 312-315). In August 2018, Plaintiff had an office visit to refill her anxiety medication, reporting that she still had anxiety attacks with some anxiety revolving around graduation and her future; that she administers her own medication; and that she is compliant with her medication. (Tr. 320-321). The following month, in September 2018, Plaintiff reported, among other things, that her anxiety was being well-controlled with medication. (Tr. 322-325).

Notwithstanding the above inconsistencies, the ALJ accounted for each of Plaintiff's impairments in the RFC, precisely explaining how he did so and citing to the limited medical records for support. (Tr. 17). The ALJ determined that Plaintiff could perform a full range of work at all exertional levels but with the following limitations: able to perform only simple, routine, repetitive tasks at a nonproduction pace; occasional, superficial contact with co-workers and supervisors; and no contact with the general public. (Tr. 15, 17). Therefore, to the extent Plaintiff again seeks a finding that there was substantial evidence in the record that might have supported additional RFC limitations and a finding of disability contrary to the ALJ's determination, this the Court cannot do. See Milam, 794 F.3d at 98; Woolf, 3 F.3d at 1213.

Therefore, this Court finds Plaintiff's argument that the ALJ erred because the RFC determination is not supported by substantial evidence is unpersuasive in light of the record as a whole.

Accordingly, for all of the foregoing reasons, the undersigned determines that the Commissioner's decision is supported by substantial evidence on the record as a whole. Because there is substantial evidence to support the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence may exist which would have supported a different outcome, or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001; Browning, 958 F.2d at 821.

## V. Conclusion

The Court's review of the record, as a whole, indicates that the ultimate decision that Plaintiff was not disabled as defined by the Social Security Administration Act during the adjudicated period was supported by substantial evidence in the record.

Specifically, on the Court's review of the record, as a whole, the ALJ's decision to discount Plaintiff's subjective complaints, the ALJ's RFC determination, and her decision that jobs existed in significant numbers in the national economy which Plaintiff could perform within the RFC determination, were each supported by substantial evidence in the record.

Therefore, based on the foregoing, and all the files, records, and proceedings herein, the

Court **HEREBY RECOMMENDS THAT**:

1. Plaintiff's Motion for Summary Judgment, [Docket No. 23], be **DENIED**;

2. Defendant's Motion for Summary Judgment, [Docket No. 26], be **GRANTED**; and

3. This present case be **DISMISSED with prejudice**.


Dated:  July 20, 2022                                         s/Leo I. Brisbois
                                                             Hon. Leo I. Brisbois
                                                             United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).